NEW YORK LIFE-INSURANCE CO. *v.* PRESTON.[1]

APPEAL AND ERROR—DETERMINATION OF CAUSE—DIVIDED COURT —AFFIRMANCE.

> The only question in this case being one of fact whether an assignment of a life-insurance policy was an absolute sale or a mere transfer as security for advances, and the sitting justices being evenly divided, the decree of the circuit court in chancery is affirmed by operation of law.

Appeal from Wayne; Brooke, J.    Submitted April 11,

---

[1] Rehearing denied January 23, 1906.

1905.   (Docket No. 52.)   Reargued November 7, 1905. Decided December 15, 1905.

Bill of interpleader by the New York Life-Insurance Company against Marvin Preston and Alanson S. Brooks, administrator of the estate of George A. Sheley, deceased, to determine the rights to the proceeds of an insurance policy on the life of said decedent.   From a decree granting insufficient relief to defendant Preston, he appeals. Affirmed by a divided court.

*Wilkinson, Post & Oxtoby* (*Levi L. Barbour*, of counsel), for appellant.

*Shaw, Warren, Cady & Oakes*, for appellee.

McALVAY, J.   The complainant, by reason of a dispute as to the ownership of a certain life-insurance policy for $5,000, issued upon the life of one George A. Sheley, deceased, filed its bill of interpleader in this cause, making the claimants defendants, and paid into court the amount due under the policy.   Defendant Alanson S. Brooks is the administrator of the estate of said Sheley, and claims the policy as such administrator.   Defendant Marvin Preston claims as assignee of said Sheley by purchase.   The decree of the circuit court awarded said Preston the sums of $822 and $111.97, together with interest thereon, and the balance of said $5,000 to said administrator.   The complainant has no interest in the dispute between these defendants and the sole question at issue is whether Mr. Preston, at the time of the death of the insured, was the absolute owner of the policy, or whether he then only held the policy as collateral security for the amount paid by him to Mr. Sheley and to the company for the premium.   The amount of these payments is not in dispute.

On May 21, 1894, Mr. Sheley was indebted to Mr. Preston in the sum of $7,000, for which amount he then gave his note.   As collateral security to such note he gave the following:

1. A mortgage on a lot on the south side of Stimson Place, Detroit.

2. An assignment of the rents, and an annuity of $500 per annum payable from the estate of Alanson Sheley, deceased.

3. A power of attorney to Julian C. Dickinson to collect and receive the annuity and certain rents.

4. An assignment of the policy of insurance in question.

On this same date the application for this insurance was made to the complainant, and the policy issued on May 25, 1894. The note representing the indebtedness above referred to of $7,000 was not paid when due, the real-estate mortgage was foreclosed, and the property sold to Mr. Preston for $1,000, and a decree entered for a deficiency of $6,492.37. Rents under the power of attorney were collected by Mr. Dickinson, and May 4, 1903, amounted to sufficient to pay and satisfy this decree, together with the premiums which had been paid by Mr. Preston upon the policy of insurance and all interest. The said policy thereupon became the property of Mr. Sheley; the indebtedness for which it was held as collateral having been fully paid and satisfied. Previous to the final payment above referred to defendant Preston wrote a letter to Mr. Sheley as follows:

"April 30, 1903.
"Mr. GEORGE A. SHELEY:
"*Dear Sir:* I am notified by the trustees of your father's estate that they will upon May 7th pay me the balance due upon the decree, and that they will not pay the premium upon your life insurance which will be due May 22, and will not honor any orders made by you upon them. If you have no way to provide for this premium, I will take care of it for you, provided I can be made secure for the amount. Possibly, if you would authorize me to hold the policy and receive the benefits until I am reimbursed, it would be sufficient. Think it over and advise me.
"Very truly,
"MARVIN PRESTON."

The foregoing facts are not disputed, nor the facts that

afterwards, on May 22, 1903, the date when the premium
on this policy was due, Mr. Sheley and Mr. Preston went
to the office of the complainant company in Detroit, where
another assignment of the policy was drawn, upon the re-
quest of these parties, from Mr. Sheley to Mr. Preston;
that they went out of the office, and soon returned with it
duly executed and acknowledged; that defendant Preston
then gave his check to Sheley for $590, and another check
for $232 to the company for the premium.    The assign-
ments of this policy of May 22, 1903, and of May 29, 1894,
from Mr. Sheley to Mr. Preston, are absolute in form and
identical in terms.    What occurred between these parties
from April 30th, when the above letter was written,
until May 22d, when the last assignment was made, is
not known.    One of the parties to the transaction is dead,
and the other disqualified as a witness under the statute.
The dispute in this case as to whether this last assignment
was an absolute transfer of this policy, or given as security
to defendant Preston, must be determined from the testi-
mony of those who were present at the office of the com-
pany when the parties were there, and from the state-
ments, conduct, and relations of the parties.    There is no
question of law in the case.

W. J. Mott was cashier in the Detroit office of the com-
pany, and testified that these parties, on the day the pre-
mium was due, came into the office,    His testimony in part
is as follows:

" *Q.* What, if anything, did Mr. Preston say regarding
the loaning of money or the paying of this premium?

"*A.* He and Mr. Sheley came in the office upon the day
that the premium was due, and Mr. Sheley was not in
position to pay the premium, and Mr. Preston wanted to
find out the values in the policy.

" *Q.* What values in the policy?

"*A.* The loan values.    He was evidently going to pay
the premium himself.    Mr. Preston asked regarding the
loan values of the policy.    I don't recall that Mr. Preston
inquired about the maturing value.    I don't recall that he
asked anything about the dividends payable under it.

" Q. The conversation then related entirely to the loan values of the policy, so far as it related to values at all? (Objected to as leading.)

" A. He asked me all about the loan value and the conditions of the loan, and, as I remember it, there was a little memorandum pad on the desk, and he kind of figured up the loan value, and the difference there would be between the ninth year loan and the next years—the tenth year—loan; and I suppose he took into consideration the premium. The form of assignment of this policy was filled out in the office of the company under my instructions or directions. * * * The assignment was not executed in our office. Our notary was out of the office. The notary who attached his signature to that paper was not in the employ of the New York Life-Insurance Company. He was located on the same floor of the Majestic Building, two doors, I think, from ours."

The witness also testified he explained to both parties that the increased loan value of the policy on May 22, 1904, was $1,210. William S. Moore, State agent for the insurance company, testified that he saw Sheley and Preston in the office on May 22, 1903; that he knew them both; that he shook hands with Sheley, and—

" I said, ' Hello, George; how do you do? Paying your premium?' He said, ' Yes.' He says, ' I am going to get some money on it.' I says, ' Our company will lend you the money.' He said, ' Preston gives me more than you—loans me more than you,' and I said, ' How much do you have?' and he said ' $590 and Mr. Preston pays the premium.' I went right out; never said another question.

" This conversation between Mr. Sheley and myself occurred in the presence of Mr. Preston. Mr. Preston was sitting there. I shook hands with him and spoke to Mr. Preston."

On the part of defendant Preston, Samuel Lawrence testified relative to a conversation had with Sheley some time after pension day in June, 1903; that Sheley invited him to drink, or have a cigar, which witness declined.

" He said, ' You have bought me a great many drinks.' I said, ' I know that, George, when I thought you needed it and was hard up.'"

Witness declined another invitation to drink, and further testified that Sheley said he had all the money he needed; that he was on easy street now; that he had sold his insurance policy to Marvin Preston, and was all right; that he didn't care who got the insurance, he was out of it.   Alvin S. Clark testified that he had a conversation with Sheley in the summer of 1903, when he paid witness $10 he had loaned him.   When asked where he got so much money, Sheley said:

" 'I have just sold my insurance policy.   I didn't want it.   I have got nobody to leave it to.'   He simply told me he had sold it and got his money for it.   He didn't explain the transaction at all."

E. F. Metzger, a furniture dealer, had a conversation with Sheley relative to fitting up some rooms, in which he said he would pay him what he owed him the next day or the day following.   Sheley came back the next day and handed him the money, and was asked by the witness where he got the money.

" He says, 'I have just sold my life-insurance policy to Marvin Preston.'   Says I, 'Can you afford to sell your life insurance ?'   Says he, 'Yes, I don't want it.   By the time I get old enough,' says he, 'the policy is paid up, I wouldn't have any more than I have now, and I haven't any money to keep it up.'"

This is all the oral evidence on both sides relating to this transaction.   The testimony of defendant Preston cannot be considered, nor can the entries he made in his books be received as evidence of this agreement.   The fact that the assignment was absolute in form, although prima facie a sale, is not conclusive as to whether it was a sale or given to secure advances made.   This court must determine this question of fact upon the preponderance of evidence.   It is true that the initiative of this last transaction came from Preston.   The letter in which his offer of assistance was made suggested only an advance of the premium in these words:   "If you have no way to provide for this premium, I will take care of it for you,

provided I can be made secure for the amount." He was also willing to hold the policy as security. The transaction which actually took place was entirely different from this proposition. Instead of $232 then coming due, $822 was the amount paid. The theory that it was a loan to Sheley upon the policy, to be held as security under the assignment, must be predicated upon this letter and the conversation in regard to loan values had at the time the assignment was made.

The record discloses that at the time this assignment was made, May 22, 1903, the policy had no cash surrender value. It had a loan value of $590, less interest deducted in advance for one year at 5 per cent., provided premium, $232, then due for the ensuing year, was paid. On May 22, 1904, the loan value increased to $1,210, subject to the same conditions. The large increase in loan value this year to the advantage of .Preston as security for a loan, as bearing upon the security theory, is more apparent than real. Preston paid $822, upon a loan value of $590, May 22, 1903. With interest for one year at 5 per cent., $41.10, this would amount to $863.10. On May 22, 1904, another annual premium of $232 would be due and must be paid before the increased loan value of $1,210, less interest for one year, $60.50, making $1,149.50, could be made available. To do this Preston would then have paid $1,095.10, leaving a margin of $54.40. The loan value was increased only at the end of the fifth and ninth years, and $1,210 was the maximum loan value ever attained by the policy. The policy, stripped of speculative promises, based upon deferred dividends, provides for but one cash guaranteed payment upon surrender of the policy of $1,835 at the end of the fifteenth year, when what is called the "accumulation period" of the policy ends. At this date Preston's payments, exclusive of all interest, had the policy been kept alive by him, would be $1,982.

The proof that this is not an absolute sale in fact, as it is in form, is not clear, satisfactory, or conclusive. Where it is sought to show by parol evidence that a written in-

strument is other than it purports to be upon its face, it seems to be well settled that the evidence must more than fairly preponderate. *McAnnulty* v. *Seick,* 59 Iowa, 590; *Voorhies* v. *Hennessy,* 7 Wash. 243; *Cadman* v. *Peter,* 118 U. S. 73; *Beebe* v. *Loan Co.,* 117 Wis. 333; *Whittemore* v. *Fisher,* 132 Ill. 259, 260.         •

The proof in the case at bar does not, in our opinion, even fairly preponderate in favor of the security theory. The testimony of three reputable witnesses with whom Mr. Sheley talked and did business at or about the time this transaction occurred, and to whom he detailed with considerable minuteness why he had made the sale of his insurance policy, taken in connection with Mr. Sheley's financial condition and the fact that from all the evidence in the case it appears that the price paid was a fair one, and all that the policy was reasonably worth, satisfies us that the assignment was not made for the purposes of securing a loan and premiums to be paid, but was an absolute transfer and sale of the policy to Mr. Preston. The weight of authority holds that an insurance policy, payable to the administrator and assigns of the insured, may be absolutely assigned by the insured to a person having no insurable interest, in the absence of fraud and for a sufficient consideration. *Mechanicks Nat. Bank* v. *Comins,* 72 N. H. 12, and cases cited; *Prudential Ins. Co.* v. *Liersch,* 122 Mich. 436, and cases cited.

Mr. Preston by the assignment became the owner of the policy, and is entitled to its entire proceeds.   The decree of the court below should be reversed, and a decree entered in favor of defendant Preston, with costs of this court against defendant Brooks.

OSTRANDER and HOOKER, JJ., concurred with Mc-ALVAY, J.

MONTGOMERY, J.  I cannot assent to the views expressed in the opinion of Mr. Justice McALVAY.  The decision of Judge Brooke, who saw the witnesses, expresses his conclusions, with which I agree, so clearly that I adopt it:

"On May 22, 1894, George A. Sheley, being indebted to Marvin Preston in the sum of $7,000 or thereabouts, made application to the New York Life-Insurance Company for a policy of life insurance in the sum of $5,000, and on the same day he executed a power of attorney to Julian G. Dickinson, of this city, by the terms of which said attorney was authorized to assign said policy of life insurance, when issued, to Marvin Preston. The policy was issued on the 25th day of May, 1894, and was immediately thereafter by said attorney assigned to Marvin Preston. Subsequent to said transaction Marvin Preston filed a bill in chancery and obtained a decree, by the terms of which certain moneys due and payable to George A. Sheley, under the terms of his father's will, were thereafter to be paid to Marvin Preston in extinguishment of the debt due from George A. Sheley to Preston. Those payments were from time to time made until on or about May 6, 1903, when the last payment was made by said trustees, and the debt secured by the decree was extinguished. On April 30th of that year, 1903, Marvin Preston wrote a letter to George A. Sheley, as follows:

"'Mr. GEORGE A. SHELEY:

"'*Dear Sir:* I am notified by the trustees of your father's estate that they will upon May 7th pay me the balance due upon the decree, and that they will not pay the premium upon your life insurance, which will be due May 22d, and that they will not honor any orders made by you upon them. If you have no way to provide for this premium, I will take care of it for you, provided that I can be made secure for the amount. Possibly if you would authorize me to hold the policy and receive the benefits until I am reimbursed it would be sufficient. Think it over and advise me.

"'Very truly,
"' MARVIN PRESTON.'

"By the terms of this letter it will be observed that no mention is made of any existing indebtedness from Sheley to Preston, except such as was secured by the decree, and which the letter informs Sheley will be paid a few days later. It will likewise be seen that Preston had in mind the fact that the insurance premium upon this policy would become payable upon the 22d of May, and, being acquainted with Sheley's financial condition, it is apparent that Preston was of the opinion that Sheley would not be in a position to take care of the premium, which by the terms of the letter he averred that he was willing to ad-

vance upon receiving proper security for such advancement; it being a suggestion that the policy be turned over to him to be held until he was reimbursed for the advancement.   It will therefore be noted that at the inception of this matter this particular policy had been held by Preston as security for several years for a debt under an assignment absolute upon its face.   It will further be noted that at the time the second assignment was made that debt was wholly canceled, and that it was the intention of Preston, when he wrote the letter of April 30th, to simply advance the premium upon the policy and hold the same as security for its repayment to him.   Exactly what occurred between Preston and Sheley with reference to the transaction on May 22, 1903, is not apparent.   Sheley is dead, and as a consequence of his death the lips of Preston as to the transaction are sealed.   What actually occurred and about which there is no dispute is that upon that day the two went in company to the local office of the New York Life-Insurance Company; that some inquiries were made by Preston as to the loan value upon the policy on that date; that an absolute assignment of said policy was made out upon that day, and executed by Sheley to Preston, and delivered to him, together with the policy, and that Preston paid to Sheley upon that day the sum of $590, and likewise paid to the New York Life-Insurance Company the premium falling due upon that day, amounting to $232.   Counsel for the estate of George A. Sheley introduced the testimony of Col. Moore to the effect that George A. Sheley, upon the day and at the time in question, said that Marvin Preston was making him a loan upon his policy, and the further testimony of Mr. Mott, the cashier of the New York Life-Insurance Company, that Mr. Preston inquired as to the loan value of the policy and was advised that the loan value post premium on May 22, 1903, was $590, and post premium on May 22, 1904, it was $1,210; that Preston did some calculating upon a sheet of paper in the presence of Mott; and that afterwards either Preston or Sheley instructed Mott to prepare the assignment, absolute on its face, which is in question in this suit.

"Counsel for defendant Preston introduced the testimony of three witnesses, Clark, Metzger, and Lawrence, to the effect that shortly after the transaction they severally had conversation with the deceased, George A. Sheley, in which, they having inquired how he became possessed

of the money which he had, which he was apparently spending rather freely, he averred that he had sold his policy of life insurance to Marvin Preston.

" Under all this testimony it is claimed by the defendant Brooks, administrator of the estate of George A. Sheley, that this assignment, although absolute upon its face, was in fact made but as security for the loan by Marvin Preston of $822, and that a decree should therefore be entered to the effect that said Preston should be reinbursed, from the fund paid into court by the complainant company, that amount, together with the interest thereon from the 22d day of May, 1903, to the date of payment, and that the balance of said fund, less one hundred and odd dollars paid by Preston upon an order of Sheley, which the trustees of the estate of Alanson Sheley refused to accept, and interest thereon, should be decreed to belong to the estate of the deceased George A. Sheley.

" While it is true that, the lips of the contracting parties themselves being sealed, one by death and the other by the statute, it is difficult to determine what the contract between them was, I have reached the conclusion upon entirely equitable grounds that this assignment, though absolute upon its face, should be treated merely as security for the amount advanced. I am impelled to this conclusion in part by the fact that the original assignment, although absolute upon its face, was unquestionably held by Preston merely as security for the amount from time to time due him from the deceased, and further, by the terms of his own letter, which is the inception of the contract that was finally made between him and the deceased, in which he obviously intended to make the advance of the premiums solely as a loan, and take the policy and an assignment of it solely as a security for said advance. I am not unmindful of the fact that the cash value of the policy at the time the deal was made was not largely in excess of the sum of $822, that being the amount paid by Preston at the time; but I cannot fail likewise to perceive that the loan value of the same on May 22, 1904, would have been $1,210, and that from said amount Preston was or would have been in a position upon that day to have repaid himself the $590 paid Sheley, and the two premiums of $232 each, due in 1903 and 1904, together with interest on all those sums. It will be seen, therefore, that Mr. Preston took no risk in making the advance in question.

· "I have given due consideration likewise to the testimony of the three witnesses introduced by the defendant Preston, touching the admissions against interest, made by George A. Sheley in his lifetime, to the effect that he had made an absolute sale of this policy to Mr. Preston. I have no doubt whatever that the witnesses in question testified truthfully and to the best of their recollection to the impression they received from Sheley in the various conversations testified to. But it will be noted that those conversations were held casually only, and under circumstances when it may well be supposed that the deceased was not paying particular attention to the exact legal effect of the statements which he might be making. On the contrary, the testimony of Col. Moore about the conversation had with Sheley upon the day the transaction was completed impresses me with its sincerity and, upon all grounds, with its probability. That conversation was held with reference to the particular matter in hand, the getting of this money on this policy, and it is quite obvious that, unless Col. Moore is absolutely mistaken as to what occurred, Sheley told him on that day that he was borrowing this money from the defendant Preston.

"The weight of authority seems to be that an insurance policy payable to the administrators and assigns of the insured may be by the insured absolutely assigned to a person having no insurable interest in the life of the insured, in the absence of fraud and for a sufficient consideration. Having reached the conclusion, however, that the transaction between these parties was one of a loan and the taking of security therefor, instead of an absolute sale, it becomes unnecessary to determine the question here."

This court has so uniformly recognized the superior position occupied by the circuit judge in determining questions of fact that it has come to be a recognized rule that weight will be given to his conclusions whenever the case is left doubtful by the testimony. This rule has the greater weight when the trial judge has shown by an opinion so cogent and logical that no consideration which is entitled to weight escaped his attention. In this case the facts which sustain the conclusion of the learned circuit judge are so convincing that resort to this presumption is scarcely necessary. The facts that money had been previously advanced on a similar assignment, that

the first proposition in connection with this transaction came from Preston who suggested a loan and not a purchase, that when at the insurance office the parties investigated the loan values of the policy rather than the surrender value, and that the statement to Col. Moore was that a loan was to be made, are most convincing as to the character of the transaction. As against this testimony there appears the alleged admissions of George Sheley, made in casual conversation. The courts have long recognized that this is the weakest kind of testimony. The conversation in which the witness has no direct interest, and the statement upon which nothing depends except the satisfaction of an idle curiosity, are so likely to be misunderstood or misinterpreted that it is going a long way to overturn a deliberate and well-considered decision of the chancellor, who saw the appearance of the witnesses, for the reason that testimony as to such alleged admissions was not accepted by him as a whole. It is evident that to none of those witnesses were the terms of the assignment made by Sheley regarded as important. The question of his profligacy, as it presented itself to them, did not depend upon whether there was an absolute sale or an assignment of the policy by way of pledge. Knowing Sheley's habits and want of thrift, it is quite clear that each of these witnesses would have been startled to learn that he had raised money on this policy. The important fact to them was that he had parted with his policy. When they came to report the conversation later, they state that Sheley said he had sold his policy. This impression ought not to outweigh the statement made at the time to Col. Moore, a statement entirely consistent with all the circumstances of the case. The decree is affirmed.

MOORE, C. J., and BLAIR, J., concurred with MONTGOMERY, J.

CARPENTER and GRANT, JJ., did not sit.