UNITED STATES *v.* IWAI & CO. (LTD.) ET AL. (No. 2913[1])

United States Court of Customs Appeals, April 9, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Oscar Igstaedler*, special attorneys, of counsel), for the United States.
*Frank P. Wilson* (*Bert Hanson* of counsel) for appellees.
*Lamb & Lerch* (*John G. Lerch* of counsel) *amici curiae*.

[Oral argument March 23, 1928, by Mr. Igstaedter, Mr. Lerch, and Mr. Hanson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in reappraisements Nos. 11274–A, 11448–A, 11535–A, and 11729–A.

The entered values of imported Japanese silks were advanced upon appraisement.

It is claimed by the Government that the appraised values correctly represent the foreign values of the merchandise. Upon appeal to reappraisement the appraised values were affirmed. Thereupon, the importers filed an application for a review of the judgment of the associate justice, in pursuance of the provisions of section 501 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 501. * * * The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with

[1] T. D. 42720.

the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, *and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor*. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an Act entitled "An Act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911. (Italics ours.)

It was claimed by the importers that the merchandise had no foreign values, for the reason that neither it nor similar merchandise was sold, or offered for sale, in the markets of Japan for consumption there; and that the entered values were the export values of the merchandise. Other questions of law and fact were involved, but the major issue in the case required findings by the court as to whether the merchandise had both foreign and export values, and if so, which were the higher; or, if but one, the kind and the amount thereof.

It appears from the record that the local appraiser appraised the merchandise at foreign values which, he claimed, included a Japanese textile consumption tax. As the appraised values were affirmed on appeal to reappraisement, export values being conceded, we assume that the associate justice, who tried the case, found that the merchandise had both foreign and export values and that the foreign values were the higher.

Section 402 of the Tariff Act of 1922 provides in part as follows:

SEC. 402. VALUE.—(a) For the purposes of this act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If neither the foreign value nor the export value can be ascertained to the satisfaction of the appraising officers, then the United States value;

(3) If neither the foreign value, the export value, nor the United States value can be ascertained to the satisfaction of the appraising officers, then the cost of production;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers, and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(c) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States,

at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. * * *

The Government claims that the appellate division of the Customs Court has failed to make findings of fact and to state them in a written decision as required by section 501, *supra*.

As the jurisdiction of this court is limited in reappraisement cases to questions of law only; and, as the statute mandatorily requires the appellate division of the Customs Court to make findings of fact and to state them in a written decision, it is reversible error for the court below to fail to make and to state such findings. *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 261, T. D. 40269; *United States* v. *Borgfeldt & Co.*, 12 Ct. Cust. Appls. 324, T. D. 40482; *United States* v. *Fragele Bros.*, 12 Ct. Cust. Appls. 381, T. D. 40543; *Kuttroff, Pickhardt & Co.* v. *United States*, 13 Ct. Cust. Appls. 17, T. D. 40861.

The record discloses that each of the three justices of the court below, who heard the case on review, wrote separate opinions. Sullivan, Justice, concluded a most exhaustive opinion with the following specific findings of fact:

1. That the entered value of the merchandise is the export value thereof on the date of shipment, and is sufficiently high to include any textile tax that may be levied upon domestic merchandise by the Japanese Government.

2. That the appraiser was without any warrant in law under the facts in this case to add a tax to the entered value of the merchandise.

3. That the single general appraiser was in error in sustaining the appraised value.

4. That we find the invoice value to be the export value of this merchandise on the date of shipment.

5. That we find the merchandise sold for export is of a different class, being of a greater width and style than similar merchandise sold for domestic use.

6. That we reverse the judgment of the single general appraiser as not being sustained by the evidence.

7. That we reverse the judgment of the single general appraiser in sustaining the addition of the Japanese tax as part of the market value as not being sustained by the facts or the law.

8. That we affirm the entered value of the merchandise as being the export value on the date of shipment.

9. That to the said entered value should be added packing.

We are somewhat in doubt as to the precise construction to be given these findings. We are inclined to the opinion that Justice Sullivan found that the merchandise had no foreign values; and that, therefore, the export values represented the dutiable values of the merchandise. We may be in error, but there seems to be some inconsistency in findings Nos. 1 and 4.

Justice Brown concurred in the conclusion reached by Justice Sullivan. He did not, however, concur in the finding that the merchandise had no foreign values. On the contrary, he found that the entered values represented the foreign values, and that the export values were not higher. He took the view that the Japanese textile consumption tax could not be included as part of the foreign values, because of the countervailing duty provisions of section 303 of the Tariff Act of 1922.

The section reads as follows:

SEC. 303. That whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

From our study of the record we do not believe that the provisions of section 303 are applicable to the issues in this case.

The Government claims that the record discloses that there is a textile consumption tax levied upon merchandise of the kind involved, in the event that it is sold for consumption in Japan; that this tax accrues at the time the merchandise is manufactured, and that it is either paid by the manufacturers at that time, or that payment thereof is secured by the execution and delivery of a bond to the Government; and that this or similar merchandise is sold in Japan for consumption there at prices which include the tax. If counsel for the Government and *amicus curiae* have correctly represented the facts as they appear in the record, it would seem clear to us that the provisions of section 303 have no application to the issues involved.

Counsel for the importers claim that neither this nor similar merchandise is sold for consumption in Japan; and that the dutiable values of the merchandise are its export values, which, of course, do not include a home consumption tax. If the views of counsel for the importers correctly represent the facts as they appear in the record, the provisions of section 303 have no applicability to the issues.

Justice Young concludes an exhaustive dissenting opinion with the following specific findings of fact:

1. Merchandise in all respects identical to that in the case at bar, including width and quality, was freely offered for sale in the usual wholesale quantities in the ordinary course of trade in the principal markets of Japan for home consumption.

2. Merchandise similar to that in the case at bar was freely offered for sale in the usual wholesale quantities in the ordinary course of trade in the principal markets of Japan for home consumption.

3. Yokohama is a principal market of Japan for merchandise like that here imported.

4. Similar merchandise is freely offered for sale in the ordinary course of trade in the usual wholesale quantities in the principal markets of Japan for export to the United States.

5. The prices at which said merchandise was freely offered for home consumption exceeded the export prices by 5 to 7 per centum.

6. The entered values were equal to or slightly less than the export values on the date of shipment.

7. The appraised value and the value found by the court below were the correct values on the respective dates of shipment for merchandise sold for home consumption.

8. The foreign value of the merchandise involved herein, as foreign value is defined by law, is the same as that found by the appraiser and the trial court.

9. The dutiable value of the merchandise is that found by the appraiser and the trial court.

We may summarize the findings as follows:

Justice Young found that the merchandise had foreign values which included the textile consumption tax and that those values were higher than the entered or export values.

Justice Brown found that the merchandise had foreign values; but that, due to the provisions of section 303, the tax thereon could not legally be included as a part of such values; and that the export values were not higher than the foreign values.

Justice Sullivan found that the merchandise had no foreign values. He further held that, even if it were conceded that such values did exist and that the tax was included therein, they, nevertheless, were lower than the entered values, which, he found, corresponded to the export values.

The pertinent part of the judgment of the court reads as follows:

The above-entitled proceeding having come on to be heard, and the parties thereto having submitted the same for determination, and the court having carefully considered the case on the record made below, it is

Ordered, adjudged, and decreed that the judgment below be, and the same hereby is, reversed and the entered value is found to be the export market value on the date of shipment, cost of packing as stated on the invoices to be added.

It will be observed that the judgment recites that "the entered value is found to be the export market value on the date of shipment, cost of packing as stated on the invoices to be added." No reference is made to findings as to foreign values. The only fact stated in the

judgment is that the entered values are equal to the export values of the merchandise. It is obvious that this finding is not sufficient to determine the issues of fact raised by the evidence in the case. Because of the failure of at least two of the justices to concur in findings of fact, there was nothing upon which a judgment could legally be entered.

For the reasons stated the judgment is reversed and the cause remanded for findings of fact in conformity to the statute.

*Reversed* and *remanded*.