VEOLAY, INC., J. E. BERNARD & CO., INC. *v.* UNITED STATES (No. 3605)[1]

[1] T.D. 46804.

United States Court of Customs and Patent Appeals, November 28, 1933

*Curie, Lane & Wallace* (*Thomas M. Lane* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

[Oral argument October 2, 1933, by Mr. Lane and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Third Division of the United States Customs Court, sitting in reappraisement, involving two appraisements under the Tariff Act of 1922. The appellants have made a motion that they be permitted to present, as a preliminary matter, the question of the jurisdiction, warrant and authority of the court below to enter the alleged judgment against them. Upon consideration of said motion, the court has heard counsel on this point, without consideration, at this time, of the merits of the controversy involved between the parties.

The challenge to the authority of the court below to enter such alleged judgment rests upon certain facts shown only of record by the affidavit of Thomas M. Lane, of counsel for appellants, which affidavit was filed in support of a petition for rehearing filed in the court below, and by the concessions of counsel, made on oral argument here. Said affidavit was not controverted by counter-affidavits, and must be taken for the purposes of the present proceeding as showing the facts which are here involved. *Thomas & Pierson* v. *United States*, 19 C.C.P.A. (Customs) 277, T.D. 45454; *Mech. App. Co.* v. *Castleman*, 215 U.S. 437.

From the record, from this affidavit and from said concessions, it appears that these consolidated cases, when taken to the United States Customs Court for review on reappraisement, were assigned by the then presiding judge, Israel F. Fischer, to a division consisting

of Judges George M. Young, Genevieve R. Cline, and Walter H. Evans; that thereafter said cases were heard by said division on October 23 and October 29, 1931, and were submitted for decision to said division at that time, all of said judges being present during the hearing thereof; that thereafter an opinion was written in the matter by Judge Evans, reduced to typewriting, signed by the judge, and also by Presiding Judge Young, in their own handwriting; that accompanying this opinion was a judgment order rendering judgment in favor of appellants, which was not dated, and was signed by, or under the direction of, Presiding Judge Young and Judge Evans, by rubber stamps, bearing their respective names.

It further appears that these two documents were then sent to the office of the clerk of the reappraisement bureau of the United States Customs Court. At that time, decisions of the United States Customs Court were not, as a practice, announced in open court, but decisions and judgments in reappraisement and remission cases were filed in the office of the clerk of the reappraisement bureau of the Customs Court, and decisions and judgments in protest cases were filed in the office of the clerk of the protest bureau of said court. Both of said offices were departments in the office of the clerk of the United States Customs Court, and conducted under his supervision and that of the presiding judge of said court.

As soon as the typewritten opinion and judgment order aforesaid were received by the clerk of the reappraisement bureau, he at once sent both documents to Judge Cline. She retained these documents until after the death of Presiding Judge Young, which occurred on May 27, 1932. Thereafter she returned them, with her dissenting opinion, to the clerk of the reappraisement bureau, where they have since remained. No attempt was made to promulgate the same.

It appears that no judgment book, or minute book, was kept in the office of the clerk of the Customs Court. The only record of the decision or judgment was the original typewritten copy of each, signed by the judges of the court. When these were returned to the clerk of the bureau, he at once placed them in a loose-leaf file, which files were bound in permanent volumes from time to time.

It appears that the practice was that the various originals were retained in the loose-leaf files in the offices of the clerks of the bureaus, and that copies thereof were sent to the clerk of the Customs Court, who thereupon certified to the correctness of the copies and caused the same to be transmitted to the parties in interest, as of the date noted by the clerks in charge of the various bureaus, as the respective dates of the placing of the same in the loose-leaf files in their offices. The judgments were not signed by the clerk of the court, and the only promulgation thereof was by the transmission of the same to the parties in interest by said clerk as aforesaid.

The affiant, in his said affidavit, makes reference to the dissenting opinion of Judge Evans, hereinafter referred to, in which a recital of the facts relative to the practice in said court is given.

Judge Young, at the time of his death, was presiding judge of the United States Customs Court by virtue of his appointment by the President of the United States under section 518 of the Tariff Act of 1922. At an early date after his death, Judge McClelland, senior judge of said court as to the date of his commission, as acting presiding judge, assigned Judge William J. Tilson to sit in lieu of Presiding Judge Young, deceased, with Judges Cline and Evans, the remaining judges of Division Three, in the consideration of said appeal.

Thereupon, Judges Cline, Evans, and Tilson, without notice to the appellants or their attorneys, and without hearing further arguments, reconsidered the matters and rendered an alleged decision therein, the said decision being written by Judge Cline, and being concurred in by Judge Tilson. Judge Evans wrote a dissenting opinion in which he expressed his belief that the court was without jurisdiction to render the judgment herein appealed from. This conclusion was based upon the opinion that the decision, formerly signed by himself and by Presiding Judge Young, was a final decision in the matter, and that, if the death of Presiding Judge Young had operated to expunge his concurrence in the majority decision, then the remaining judges being of opposite views, by law the judgment of the court must be considered as affirmed.

This alleged final decision and judgment of Judges Cline and Tilson was rendered on October 21, 1932, and was duly promulgated by the clerk of the United States Customs Court as of that date.

Thereupon the appellants, appearing specially, made a motion for a rehearing, in and by which said motion the appellants stated the facts substantially as heretofore detailed, and contended that the original decision of Presiding Judge Young and Judge Evans, together with the judgment order thereto attached, constituted the decision and judgment order of the said court; that said decision exhausted the judicial functions of said division in the cases, and that the acting presiding judge was without power to assign Judge Tilson to said division for the consideration of said cases; that said reassignment of Judge Tilson to said cases was made after the trial thereof, and that such action was, and is, contrary to section 518 of the Tariff Act of 1922, and other applicable laws; that after trial, submission and decision of said cases, no change could lawfully be made in the judicial personnel of the division which originally had jurisdiction thereof, so long as a majority of such personnel survived; that complete jurisdiction of the subject matter continued to reside in the survivors of said original division, Judges Cline and Evans.

This motion was overruled and, thereupon, the appellants assigned error and brought the matter here for review.

The first question which presents itself is whether the reappraisement matter pending before Division Three was finally determined by the rendition of a decision, in conformity with the statute, before the death of Presiding Judge Young. Section 501 of the Tariff Act of 1922, which is, practically, reenacted in section 501 of the Tariff Act of 1930, so far as pertinent, is as follows:

The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an Act entitled "An Act to codify, revise, and amend the laws relating to the judiciary", approved March 3, 1911.

It will be observed that this section, which refers to the procedure in reappraisement appeals, differs from section 515 of the Tariff Act of 1922, and section 515 of the Tariff Act of 1930, providing for the procedure in cases of appeals in classification matters, arising from protests. These latter sections provide, so far as pertinent:

* * * Such determination shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs Appeals within the time and in the manner provided by law.

In classification matters, a *decision* and *judgment order* are required. In reappraisement matters, a written decision, only, is required. There is, however, no distinction, in legal effect. Each is a judicial determination, conclusive upon the parties, unless appealed from, in accordance with law. See *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T.D. 40944; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T.D. 41318.

The practice of the United States Customs Court as to its decisions is regulated by rule 29 of said court, which is as follows:

All judgments shall be entered by the clerk of the court in accordance with decisions rendered by a judge when sitting in reappraisement, or in accordance with decisions concurred in by a majority of judges when functioning as a division, and in any case following draft of judgment attached to the decision by the judge writing it.

An exact copy of each decision shall be forwarded to the plaintiff, and also to the collector of the port where the protest, claim, petition, or appeal was filed, together with a duly certified copy of the court's judgment order. The court's judgment order shall be the collector's mandate and shall constitute his authority for the reliquidation of an entry, if such be the order of the court.

The clerk shall also forward a copy of every decision to the Secretary of the Treasury and the Assistant Attorney General and to such other persons as the presiding judge may direct.

Until a judgment order shall have been duly entered the decision shall not be accessible to the attorneys for either party or to any person not entitled thereto.

It will thus be noted that the United States Customs Court has adopted the practice of filing a judgment order in reappraisement matters, although not so required by the statute. This should be borne in mind in considering whether any decision of the reappraisement appeal was made before the death of Judge Young.

Even if it be conceded that such an order was necessary in this case, the question as to whether it was signed by a rubber stamp is immaterial. A signature printed, typewritten, engraved, or made by rubber or other stamp, if authorized, is a sufficient signing. *Mondragon* v. *Mondragon*, 113 Tex. 404, 257 S.W. 215; *Ardery* v. *Smith*, 35 Ind. 94, 73 N.E. 840; *In re Deep River Nat. Bank*, 73 Conn. 341, 47 A. 675; *Costilla Estates, etc.* v. *Mascarenas*, 33 N.M. 356, 267 P. 74; *Tabas* v. *Emergency F. Corp.*, 9 F. (2d) 648.

Material portions of sections 518 and 519 of the Tariff Act of 1930 are as follows:

SEC. 518. The United States Customs Court shall continue as now constituted, except that the chief justice and the associate justices of such court now in office and their successors shall hereafter be known as the judges of such court. All vacancies in such court shall be filled by appointment by the President, by and with the advice and consent of the Senate. Not more than five of the judges of such court shall be appointed from the same political party and each of such judges shall receive a salary of $10,000 a year. They shall not engage in any other business, vocation, or employment, and shall hold their office during good behavior. The offices of such court shall be at the port of New York. The court and each judge thereof shall have and possess all the powers of a district court of the United States for preserving order, compelling the attendance of witnesses and the production of evidence, and in punishing for contempt. The court shall have power to establish from time to time such rules of evidence, practice, and procedure, not inconsistent with law, as may be deemed necessary for the conduct of its proceedings, in securing uniformity in its decisions and in the proceedings and decisions of the judges thereof, and for the production, care, and custody of samples and of the records of such court. Under such rules as the United States

Customs Court may prescribe, and in its discretion, the court may permit the amendment of a protest, appeal, or application for review. One of the judges of such court, designated for that purpose by the President of the United States, shall act as presiding judge, and in his absence the judge then present who is senior as to the date of his commission shall act as presiding judge; and until any such designation is made the chief justice of the United States Customs Court now in office shall act as presiding judge. The presiding judge, or the acting presiding judge in his absence, shall have control of the fiscal affairs and of the clerical force of the court, making all recommendations for appointment, promotions, or otherwise affecting such clerical force; he may at any time before trial. under the rules of the court, assign or reassign any case for hearing or determination, or both, and shall designate a judge or division of three judges and such clerical assistants as may be necessary to proceed to any port within the jurisdiction of the United States for the purpose of hearing or of hearing and determining cases assigned for hearing at such port, and shall cause to be prepared and promulgated dockets therefor. * * * The judges of said court shall be divided into three divisions of three judges each for the purpose of hearing and deciding appeals for the review of reappraisements of merchandise, and of hearing and deciding protests against decisions of collectors. A division of three judges or a single judge shall have power to order an analysis of imported merchandise and reports thereon by laboratories or bureaus of the United States. The presiding judge shall assign three judges to each of said divisions and shall designate one of such three judges to preside. The presiding judge of the court shall be competent to sit as a judge of any division or to assign one or two other judges to any of such divisions in the absence or disability of any one or two judges of such division. A majority of the judges of any division shall have full power to hear and decide all cases and questions arising therein or assigned thereto. A division of the court deciding a case or a single judge deciding an appeal for a reappraisement may, upon the motion of either party made within thirty days next after such decision, grant a rehearing or retrial of such case when in the opinion of such division or single judge the ends of justice so require.

SEC. 519. All decisions of the United States Customs Court shall be preserved and filed and shall be open to inspection, and it shall be the duty of the court to forward a copy of each decision to the collector of customs for the district in which the merchandise affected thereby was imported and to forward an additional copy to the Secretary of the Treasury, who shall cause such decisions as he or the court shall deem sufficiently important to be published in full, or, if neither the Secretary of the Treasury nor the court deems a full publication thereof necessary, then the court shall cause abstracts of such decisions to be made for publication, and such decisions and abstracts thereof shall be published from time to time and at least once each week for the information of customs officers and the public.

The Customs Court has also adopted the following rule, fixing the duties of the clerk of that court:

5. *Clerk.*—The presiding judge shall appoint a clerk of the court, who shall have the custody of and be responsible for all records, papers, and exhibits filed with the court or a judge thereof, and have supervision of the library, and direction of the clerks, reporters, and attachés of the court, under the supervision of the presiding judge, except the judges' private secretaries and the marshal.

The clerk of the court shall indorse on every court paper the date on which it is filed, and shall not permit any original paper, exhibit, record, or document to be taken from his office without an order of the court or one of the judges.

He shall designate a clerk, to be known as the calendar clerk, whose duty it shall be to prepare for the several divisions, with the approval of the judges thereof,

trial calendars of cases that are properly cognizable before them, placing on the calendar, in the order of their filing, such cases as may be disposed of conveniently.

The calendar clerk shall attend all hearings of the several divisions in New York, and, under the direction of the judge presiding, shall call the calendar and properly distribute the cases which have been submitted for decision to the several judges, according to the subjects involved.

In the light of these provisions of law and of the rules of said court, let us consider the procedure followed in the case at bar. Judge Evans wrote a decision, which was typewritten, and to which he attached his signature. To this typewritten copy was appended the signature of Presiding Judge Young, as concurring. Where this was done, the record does not inform us. A form of judgment order was also signed by both said judges, but with the date of the same left blank. These two papers were then sent to the clerk of the reappraisement division, evidently a subclerk who acted, under said rule 5, under the direction of the clerk of the court. This official, upon receipt of said papers, sent both of the same to Judge Cline, the third member of the division. She retained them, as hereinbefore stated, until after the death of Presiding Judge Young.

It therefore appears that, from the time the clerk of the reappraisement division received the said purported decision and judgment order until they were returned by Judge Cline, there was nothing in the office of the clerk of either the reappraisement division, or the clerk of said court, to indicate that any decision had been arrived at. If there was any such decision under the provisions of said section 519, it should have been "open to inspection," and, under the provisions of said rule 29, "accessible to the attorneys for either party," or to any person entitled thereto. It should also have been *promulgated* by the clerk of said court under the provisions of said rule 29, and *filed* under the provisions of said section 519.

The affidavit of appellants' counsel discloses that no judgment docket was kept by the clerk of the court, and that the act of entering judgment consisted of filing the decision and judgment order in a loose-leaf file in the reappraisement clerk's office. The keeping of such a loose-leaf file was an adequate method of keeping a judgment docket. *Lynch* v. *Burt*, 132 Fed. 417, 426. Until that time, there was no filing, no record of the decision, it was not open to public inspection and it was not promulgated. None of these things had been done in the case at bar.

Again, it will be observed that section 198 of the Judicial Code, provides that appeals from the decisions of the United States Customs Court may be had to this court, by application filed in this court "within sixty days next after the entry of such decree or judgment, and not afterwards." Certainly this period would not begin to run until the decision had been filed and had become a public record. A holding that the period begins whenever a majority of the judges

concur in their views, would make the quoted provision of said section 198 uncertain and largely indefinite.

We are therefore brought to the conclusion that no decision had been arrived at prior to the death of Presiding Judge Young. Argument is advanced that a majority of the court had rendered a decision and that this decision was held in abeyance to permit Judge Cline to file a dissenting opinion. But there is nothing in this record to indicate that Judge Cline was intending to dissent, or that her associates in the division knew that this was her attitude. It will be borne in mind that the decision of Division Three in this case was not the decision of two judges, but the decision of the court, and could only be arrived at through conference and joint consideration. Judge Cline had a right, and it was her duty, to inspect and study the proposed decision of her associates, and to confer with them, before a final decision should be rendered. So far as this record shows, she was doing this when Presiding Judge Young, unhappily, died. Until this was done, no decision had been arrived at by the division.

It therefore becomes unimportant to discuss the distinction between a decision by the division, and the rendition of a judgment therein, raised by counsel for appellants.

The authority of Presiding Judge Young to act judicially ended with his death. Freeman on Judgments, fifth edition, section 58; *Wilson* v. *Rodewald*, 61 Miss. 228; *State* v. *Allen*, 235 Mo. 298, 138 S.W. 339.

The reappraisement appeal, therefore, at the time of the death of Presiding Judge Young, was within the jurisdiction of Division Three. It had been heard by the division and not decided. Thereafter it appeared that it could not be decided by the surviving members of the division, as they entertained opposing views. No attempt has since been made to reassign this cause to any other division. That division has never lost jurisdiction of the appeal, except insofar as the same was removed to this court on appeal. *Prosser* v. *United States*, 158 Fed. 971; *United States* v. *Park & Tilford*, 4 Ct. Cust. Appls. 293, T.D. 33514.

The conclusion being that the said written opinion and judgment order of Presiding Judge Young and Judge Evans did not constitute, in law, a decision of the matter, we must next inquire whether, upon the subsequent failure of the surviving judges, Judge Cline and Judge Evans, to agree, it must be held, as Judge Evans suggests in his dissenting opinion, that the judgment of the single judge is affirmed.

It was the rule of the common law of England, and this rule has been adopted by the Supreme Court of the United States, that where the appellate court is evenly divided in opinion, the judgment of the lower court will be affirmed. In such cases, no principle is settled. The decision means simply that the appellant, upon whom rests the

affirmative, has been unable to convince a majority of the court that he should prevail. *The Antelope*, 10 Wheat. 66, 125; *Etting* v. *United States Bank*, 11 Wheat. 57, 76; *Brown* v. *Aspden et al.*, 14 How. 25; *Durant* v. *Essex Co.*, 7 Wall. 107.

This rule is one of necessity. A review of the authorities will show that it is adopted only when there seems to be no alternative, and where to fail to do so would indefinitely prolong the litigation, with no useful result. Such rule generally obtains in courts of last resort, where no other or further remedy seems to be open to the litigants.

In *Luco* v. *Toro*, 88 Calif. 26, 25 P. 983, an interesting case on the subject, the court consisted of a chief justice and six associate justices. The Constitution provided that the concurrence of four justices present at the argument should be necessary to pronounce a judgment in banc, but if such four justices so present did not concur in a judgment, then all the justices qualified to sit in the cause should hear the argument, but four judges must concur in the decision. The case was heard several times, but, owing to a change in the personnel of the court, the court was always evenly divided, six justices being qualified to act. A motion was made to affirm, but the court decided this could not be done, because of the constitutional requirement of four justices to pronounce judgment. It was then argued that the justices who voted for a reversal should unite with their associates in affirming the judgment, or otherwise the case might be continued for four years, until a change in the membership of the court might occur. The court refused to do this, stating—

Some of the cases referred to went off on the authority of statutes providing that in cases of equal division among the judges the judgment should be affirmed, others upon a rule following the practice of the English courts, and the others upon the ground of expediency.

In further comment, the court said:

In jurisdictions presided over by judges holding for life, or for terms so great as to make the probability of change in the membership of the court remote, the judgment of affirmance follows a division *ex necessitate rei*.

Further, the court stated:

The judges simply agree that it is expedient to finish the litigation. It is a public expediency, and is often expedient also with respect to the interests of the parties.

The court then concluded that there were no such considerations in the case before it, and that before the next term of court at which the cause would be heard, the terms of three, or possibly four of the judges would be ended, and they be succeeded by other judges, and therefore denied the motion for affirmance.

It has been held by the Supreme Court of Florida, in *State* v. *Hampton*, 47 Fla. 224, 37 S. 51, that where the members of a court are equally divided in opinion, a judgment of affirmance will be entered.

The Constitution of Florida provided that the concurrence of a majority of the members of the court should be necessary to a decision, wherever the court sits as one body, and the court remarked that this required a majority to concur in order to decide a cause either for affirmance or reversal. The court called attention to the fact that in California, where the court is divided and there is no probability of an immediate change in the personnel of the court, the judges will unite in a judgment of affirmance. In Florida, if it seems the division of the court is permanent "and there is no probability of an immediate change in the personnel of the court", it is the duty of the judges to unite in a judgment of affirmance. This is done for purposes of public expediency, to end the litigation.

In North Carolina, one justice did not sit, and the Supreme Court was evenly divided. After the case stood on the docket for four terms, a judgment of affirmance was entered. *Town of Durham* v. *Richmond, etc.*, 18 S.E. 208.

In Wisconsin, a similar rule is followed. In *Jacobs* v. *Queen Insurance Co.*, 101 N.W. 1090, the chief justice was disqualified. The remaining judges were equally divided and the court remarked that, in such case, "the judgments as to such appeals must be affirmed *ex necessitate*."

In Oregon, a matter came before the Supreme Court and the court was evenly divided on one point in the case. A motion was thereupon made to affirm. However, the judges caused a reargument of the case to be heard on two following occasions, and finally the concurrence of four justices was obtained and this, it is said, was adopted as the course of procedure in order to try to obtain such concurrence. The law of the state provided, "when sitting in banc, the concurrence of four justices shall be necessary to pronounce a judgment." *Stevens* v. *Myers*, 91 Ore. 114, 177 P. 37.

In South Dakota, a case came before the Supreme Court, and one of the judges was disqualified. The remaining members of the court were evenly divided. It is said, in the opinion, "The remaining members of this court, being divided upon the questions involved herein, and there being no provision of law for calling in a substitute judge, the order appealed from is affirmed by a divided court." *State* v. *Pike*, 38 S.D. 446, 161 N.W. 813.

In New Jersey, in *Monroe Hotel Co.* v. *Somers' Estate*, 115 A. 405, the Court of Errors and Appeals of the State was equally divided. Thereupon the court, in a *per curiam* opinion, affirmed the judgment, stating that the judges being equally divided on the question whether the judgment should be reversed, the judgment was affirmed solely because of such division, which renders any opinion by the court impossible.

In New Hampshire, where the Supreme Judicial Court was evenly divided on a question, the court analyzed the various cases of a decision by a divided court and concluded that no judgment should be given and permitted the case to remain pending, without disposition. The court also called attention to the fact that there is no uniformity of decision in such cases. *Northern Ry.* v. *Concord Ry.*, 50 N.H. 166.

The Supreme Court of Indiana, in *Irons* v. *Hussey*, 3 Ind. 158, was passing upon a case which came from the circuit court, which was heard there without the intervention of a jury, by two judges who divided in opinion as to the judgment to be rendered. The court said:

> When an issue is submitted to the court, there must, upon the same principle, be a finding by the court in favor of one party or the other, which it seems clear, there cannot be, if there are but two members of the court, and they disagree as to such finding. There can be no finding by the court unless it is agreed to by the judges, or, at least, a majority of them. Under such circumstances the cause should be continued for a new trial.

An appealed case was argued before the Supreme Court of Michigan. The court was divided. Thereupon a reargument was ordered. Upon the reargument, the judgment was affirmed by reason of a divided court. *New York Life Ins. Co.* v. *Preston*, 105 N.W. 1130.

In a case in Illinois, on appeal to the appellate court, where the judge assigned to write the majority opinion died, and the other two judges were unable to agree, *held* that the judgment would be affirmed, it appearing that there would be a delay of several months before the successor of the deceased judge could consider the case, and it also appearing that whichever party was defeated would take the case to the Supreme Court. *Commissioners of Highways of Town of Tampico* v. *Drainage Commissioners of Drainage District No. 2 of Tampico and Hahnaman Townships*, 188 Ill. Appellate Court Reports 7.

It will thus be seen that the rule will not be invoked if by statute, by prospective changes in personnel, by the substitution of other judges, or the filling of the court, it can be avoided, and the litigants have their cause decided upon its merits.

As we view the various provisions of law creating the Board of General Appraisers, now the United States Customs Court, and fixing its jurisdiction and powers, there seems to be no necessity for the invocation of this rule when two of the judges of a division of such court are considering a case and are divided in opinion. In fact, it may well be concluded that one of the objects which the lawmakers had in mind was to avoid any such situation.

The law is flexible. It must be so, from the necessities of the case. The court is composed of the presiding judge and eight associate judges. In the discharge of their manifold duties, the judges must frequently be absent on circuit for extended periods. The court

having its offices in New York, many of its judges are constantly available to fill vacancies in divisions. This, no doubt, was fully considered by the Congress in enacting said section 518, wherein it is stated:

The presiding judge of the court shall be competent to sit as a judge of any division, or to assign one or two other judges to any of such divisions in the absence or disability of any one or two judges of such division.

It does not at all appear in harmony with the trend of judicial decision that, with such powers, whereby the parties litigant may not be delayed, and where the cause can proceed forthwith to a decision upon its merits, the failure of two judges, sitting alone on a division, to agree, should cause an absolute failure to attain the purposes of the litigation.

Nor is it in harmony with the evident legislative intent, as expressed in the act. Said section 518 provides:

A majority of the judges of any division shall have full power to hear and decide all cases and questions arising therein or assigned thereto.

In other words, two judges may hear a case, in the case of absence or disability of one of the judges of the division, and, if they agree, can decide it. But, certainly, if they cannot agree, they have decided nothing, and the cause should go to the full division, which can decide it.

Again, section 501 of said act provides that when a division is sitting in review in reappraisement matters, it shall—

state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor.

If two judges be sitting, and they disagree, there can be no such statement of facts and reasons therefor. Hence no statement is forwarded to the collector. The same section also provides for an appeal from this decision, upon a question or questions of law only, to this court. If the judgment below is to be affirmed because of the fact alone, that the two judges do not agree, there is no question of law to present upon appeal, because none has been decided below. When there is no finding of facts, there is nothing upon which a judgment may be based. *United States* v. *Iwai*, 16 Ct. Cust. Appls. 56, T.D. 42720; *United States* v. *Alitary Mica Co.*, 17 C.C.P.A. (Customs) 284, T.D. 43692.

We are therefore of the opinion that the disagreement between Judges Cline and Evans did not, in law, constitute an affirmance of the judgment of the single judge. The case should have been placed upon the calendar for a retrial by the full division.

Whether Acting Presiding Judge McClelland acted within his statutory powers in designating Judge Tilson to sit with Judges Cline and Evans in the consideration of these cases, is a point which need not now be decided, for, as we view this record, the judgment must be

reversed and the cause remanded for a new trial, for the following reasons:

It appears from the affidavit, and from the concessions of counsel upon oral argument here, that neither appellants nor their counsel had any notice of the assignment of Judge Tilson to sit with Judges Cline and Evans on Division Three, that these cases were not placed upon the calendar thereafter, that appellants and their counsel were given no opportunity to be heard in the matter, and that the first notice to appellants and their counsel was the rendition and promulgation of the said purported decision.

Certainly, this was not in conformity with the letter of the law. Section 501 of the Tariff Act of 1922, hereinbefore quoted, prescribes what shall constitute a hearing before the Board of General Appraisers (now United States Customs Court) in such matters. The board (now division) shall consider the case upon the samples and the record made in the court below. Then follows this significant statement: "After argument on the part of the parties if requested by them or either of them," the division shall decide the matter.

How may a party avail himself of this right to be heard, if the case be not set for hearing and if he have no notice of the proceedings? An essential right of the appellants was taken from them when they were deprived of the right to be heard, or, at least, to request to be heard. It is argued that this was not important, as the case was decided upon the written record from the lower court. The opportunity to present one's cause to the court hearing a cause has always, in American jurisprudence, been held to be an essential right. *United States* v. *Saunders et al.*, 5 Ct. Cust. Appls. 270, T.D. 34446; *Windsor* v. *McVeigh*, 93 U.S. 274. Here it must certainly be so held, as the statute expressly provides for it.

The appellants are entitled, under the provisions of said section 501, to a hearing before a division of the United States Customs Court, consisting of three judges, including the right to argue the causes, if requested, and a decision by the majority of such a division. This, we are of opinion, they have not had, and that a new trial of the causes should be ordered, that the parties may have the remedies that the law contemplates. The judgment of the United States Customs Court, Third Division, is therefore *reversed*, and the causes are *remanded* for a new trial.